We'll move to the second case now, Common Cause v. Secretary of State of Georgia. Okay, Mr. Tyson. Good morning, Your Honor. May it please the Court, Brian Tyson for the Secretary of State. After a close election, a plaintiff sought emergency relief during the counting of ballots, alleging that there was a hacking by a foreign government of Georgia voting equipment, the Voter Registration Database, possibly by Vladimir Putin, and requested that they obtain emergency relief to ensure the counting of provisional ballots for voters who were not found in the Voter Registration Database. Here's the problem I have. It seems to me Common Cause obtained a TRO altering the way that the state election officials validated provisional ballots cast in the 2018 general election. That materially changed the relationship of the parties and made them a prevailing party for purposes of obtaining attorney's fees. What am I missing? Your Honor, I think the important thing to be aware of is that the relief that Common Cause obtained was really, it was irrational in terms of the Secretary can't certify before a particular day, and it required basically a recheck of what was already being done by non-party county election officials. And I think that's a key point here, is that the role of the Secretary as to provisional ballots, it really isn't one in the statutes. The role for counting, especially people who were not on the Voter Registration Database, is a decision solely for county registrars. Here's the problem. I understand the test for prevailing party status is, look, if you've been awarded some judicial relief, at least some relief on the merits of a claim, and that has changed, materially changed the relationship of the parties, you can get fees. Right? Yes, Your Honor, that's correct. They got it, didn't they? You can minimize the effect of it and say it was very limited. That's a different question. It doesn't mean that they don't have prevailing party status, as I understand them all. Well, Your Honor, in the Texas State Teachers Association case, the Supreme Court, and in Sol v. Winter as well, has said there are situations where the relief is such a technical victory or de minimis in nature that it doesn't afford the prevailing party status. And we would submit in this case, since the relief was so limited, the secretary was ultimately able to certify the election after this recheck was done. And compared to the complaint itself and the relief that was being sought by the plaintiffs, they obtained almost no relief there. Well, let me see. All right. So the court required the secretary to wait until November 16 to certify the results, right? Yes, Your Honor. The secretary had indicated he intended to certify the results on the 14th, right? Well, I think that is a point of dispute, Your Honor. I've looked through the record. The closest thing I can find is Director Harvey's testimony in the hearing, where he indicated the preference of the secretary is generally to certify as soon as possible after receiving county approval. But the TRO made that no longer permissible. That is correct, Your Honor. And he had that discretion before the TRO was entered. That is correct. But ultimately... And, Your Honor, we would submit that it couldn't because the secretary did not... We don't know exactly the timeline in which the secretary was going to certify. The court believed it was the 14th. The secretary ultimately certified on Saturday, the 17th. So it wasn't like the secretary certified at 5.01 p.m. on the 16th as soon as the TRO expired. Let's talk about the hearing on the motion for the TRO. The counsel for the Secretary of State represented that the secretary's office will normally certify the day after the county certifies. The Secretary Elections Director gave testimony about that, too, right? Yes, Your Honor. So why wasn't it reasonable for the court to infer that the secretary was going to do what he ordinarily does? Your Honor, I think the context of this litigation is very important to remember. This was the hotly contested gubernatorial election. The second place finisher at the time was saying the number of provisional ballots that were outstanding was going to be sufficient to change the result. And ultimately, the secretary took longer than the time allowed by the TRO to certify, which would tend to indicate that the secretary maybe wasn't going to take as long. We had a brand new secretary... But isn't... But I guess that maybe the way I'm reading the record, and maybe you can tell me I'm incorrect in my understanding of the record, but the way I understood the record is the testimony could have been, we have until X date to certify. But my understanding is, is that the judge was instead told, we're going to certify by this date. And that's why the trial court judge then picked the date that was further out. I mean, there's a big difference between saying, we have the ability to certify until this date. And at this point in time, we can't, we have no, we don't, we have not made a decision as to when we're going to certify, but we have this, this is the last date possible to certify. Correct? But that's not what the testimony was. That's correct, Your Honor. And the testimony was that this was the usual practice of what would happen because of the looming runoffs. But at this point, I think it was so early in the process that no one knew for certain when the date was going to be. And ultimately, it was another day after the day allowed by the district. If you're conceding that, in essence, that was the usual practice, then by the trial court judge saying, okay, you're not going to follow the usual practice, doesn't that materially alter or change the relationship? I mean, my thing is, is that, look, the testimony is what the testimony is. So if the Secretary wants to get up there and say, look, we have until X date to certify, and we're going to pick, we're going to, we may either do it before, but that's our last date, the drop dead date is this date. And, you know, at that point, maybe your argument would have some validity, but I don't see how the argument has any validity when you have testimony that says, this is our usual practice. Yes, Your Honor, and I hear you on that. Maybe in the interest of time, I can move to our second argument. Well, I mean, I mean, that's not the only problem. You know, the district court also ordered the Secretary to immediately establish and publicize on its website a secure and free access hotline or website that would comply with the Help America Vote Act. You know, the court also, after finding the errors and vulnerabilities in the My Voter Page database risk depriving Georgians of their right to vote, the district court ordered the Secretary or local officials after certification, but before the Secretary certification, to verify voter voter eligibility with voter with information beyond the registration information in the My Voter Page database. I mean, the district court ordered the Secretary to do things based on this record that materially changed the relationship, it seems to me. I hear you, Your Honor, and I think that the key point really, at the end of the day, is setting aside the prevailing party issue on the abuse of discretion for the amount of fees that were awarded. Looking at the complaint and what the plaintiffs sought in the complaint was essentially a complete overhaul of the provisional ballot system. They only got to the TRO that they got to on those various points with the assistance of the district court when the district court specifically directed them to file particular categories of evidence. But here's the thing. So what relevant factor did the district court not consider, or irrelevant factor did it consider, and how was its factual, how were any of its factual findings clearly erroneous? Because I looked through this in terms of the amount, and that's what it seems to me you'd have to show, and I don't see where you've shown it. And, Your Honor, again, I think it goes to the magnitude of the relief that was obtained compared to the TRO, which was the sole basis for any fee award with what the allegations were in the complaint. The district court should have discounted more than just the 9% off of what was requested, given the scope of relief that was actually obtained and the narrowness of that relative to what the plaintiffs sought in their complaint originally. I think at the end of the day, we're at a point where there was a five-day, six-day period of litigation for which fees were sought. It was very narrow relief that ultimately expired on its own terms. Common Cause did not seek any additional relief after that. And, as a result, the district court should have weighed the magnitude of the relief obtained as it considered awarding almost the entirety of what was sought in the case, given the very narrow nature of the relief. So, with that, Your Honor, if there are no questions, I'll reserve the rest of my time for rebuttal. Okay. Ms. Burrs, did I pronounce your name correctly? Yes, you have. Good morning, Your Honors. May it please the Court? My name is Farrah Burrs. I'm from Paul Weiss, Driftkin, Morton & Garrison. I'm here on behalf of Appali, Common Cause, Georgia. The district court correctly determined that Common Cause was a prevailing party and was entitled to almost all of the fees that it requested. And the Secretary's arguments, many of which were made for the first time on appeal, are based on errors of law and mischaracterizations of the record, and they fall primarily into three buckets. First, as Your Honors recognized, the Court's order did materially alter the actions of the Secretary in a way that entitles Common Cause to prevailing parties' deficits. Did I get the three ways that it did that? Sure. Court, you did. I mean, when I said earlier the three ways that I thought it had changed the relationship, did I get them right? Is that it? You got it absolutely right, Your Honor. The second bucket is that the law is clear that the prevailing party inquiry does not turn on the magnitude of the relief. That's a question about the reasonableness of the amount. And a party prevails if it succeeds, as Your Honor pointed out, on a significant issue which achieves some of the benefit. And that test was met here. And the third issue is that having correctly determined that Common Cause was a prevailing party, the district court was well within its discretion to grant the fees that it awarded. And the Secretary's arguments now about reasonableness bear no resemblance to the arguments made on that particular issue below. Turning to the first point about material alteration, Chief Judge Pryor, you hit it exactly right. There were three ways in which the Court's order materially altered the Secretary's action. Importantly, by specifying the exact type of review that had to be done of the ballots, what should be considered, who should do it. And by setting a date by which the certification could not take place earlier, which was two days later than what the Court found the Secretary would have certified. So I think there really is no doubt on this particular record that the actions of the Secretary were materially altered. The relationship changed. The Secretary focuses on the fact that Common Cause, they argued, did not accomplish everything that they set out to accomplish in the complaint. But that argument misses the mark because the degree of success is relevant to the reasonableness of the award, not the threshold question of prevailing party status. In particular, in the injunction context, the law is clear that a party need not even obtain relief identical to what it specifically demanded as long as it's of the same general type. And from the very initiation of the litigation in the first paragraph of the complaint, Common Cause made clear that what they were looking for was injunctive relief to ensure the provisional ballots were properly counted and asked the Court to enjoin the rejection of the ballots on the grounds that a voter's name was not found on the electronic registration list. And that is the general type of relief that the Court ultimately granted. An injunctive order requiring ballots to be reviewed in a particular way, using information beyond that registration list, and that the certification not take place earlier than November 16th, which was two days later than the Court found it would have happened. Finally, I just want to touch on briefly on one point that was in the Secretary's brief, which is that because some of the evidence was submitted in response to court requests for evidence that Common Cause isn't a prevailing party, this is not a situation where the Court was relying on evidence outside the record. The District Court here, as district courts often do, asked for more information to be put into the record. And there's no support in the law for a procedure whereby a district court has to piece together the record and figure out how much or how significant the evidence was that was submitted in response to a court request, rather than on a party's own initiative. And that would be inconsistent with the precedent establishing that attorneys' fees applications should not become second major litigations on their own. Finally, let me just turn briefly to the reasonableness of the award itself. The District Court carefully weighed the evidence that was in the record and made a determination that it was not an abuse of discretion. Again, the Secretary's arguments are different now on the reasonableness question than they were below. Below, there were just conclusory arguments made about reasonableness of rates and challenges to a handful of specific entries. Now, the Secretary is making different arguments about reasonableness. For that reason alone, they should be rejected. I mean, basically, the Secretary's argument, as I understand it, is that your client only achieved a pyrrhic victory. Right? I understand, Your Honor, the Secretary's argument to be that. That is not the case. I'm not saying it is the case, but I mean, that's really the argument, isn't it? That does appear to be the Secretary's argument. And Common Cause did, in fact, achieve success on a significant issue and had the ballots reviewed in a particular way in that certification deadline. And if we think that that was a meaningful success, there's no way we can say the District Court abused its discretion. Thank you, Your Honor. Is that right? That is correct. And if there are no further questions, we'll request that the Court affirm the District Court's order. Do either of my colleagues have any questions? None for me, thank you. No, thank you. Thank you, Your Honors. Thank you, Ms. Burse. Mr. Tyson, you've saved five minutes. Thank you, Your Honor. I'll just address a couple of points here. Am I right about that last point? I mean, that's what your argument really boils down to on the amount of fees. Yes, Your Honor. I think that there's a relationship between our arguments on the prevailing party piece of the puzzle, which we did raise to the District Court below, and the reasonableness of the fees on that side. There's really no argument in the District Court, did you, that if Common Cause is a prevailing party, that it should get no fees or fees as little as $33,980 based on the minimal success? Your Honor, I don't think we framed it quite that clearly. The dollar amount that we argued for in the District Court was similar in that the reduction… It was based on a different argument, wasn't it? I believe it was based on specific objections to the time entries and the pieces that were raised there as were required to do in response. Which is not the same as the argument that you're making now. Correct, Your Honor. But I think, again, that it's important to recognize the scope. And I think you are correct that if the court determines that this was a significant victory on behalf of Common Cause, which we don't believe it is, that then we are in a difference at a review as far as the abuse of discretion of the District Court. Not in a difference. I mean, then we have to affirm it. Yes, Your Honor. I think that's correct. And we would submit that's not the right result, but I understand that if the court believes that is the answer to that question, I think that dictates the outcome. Again, I think the key point is looking back at the complaint and the degree of success versus that. The hotline pieces were not part of the complaint. There's all these other pieces of the order that the District Court fashioned that ultimately were not part of what the plaintiffs sought, even in their motion for TRO. Which, again, we would urge the court to say that that is not significant relief. But if there are not further questions, Your Honor, I think the court has the issues very clearly. Okay. Thank you, Mr. Tyson. We'll move to our third case. Thank you, Your Honor. Thank you.